JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM | Date: November 12, 2020

Title: Center for Medical Progress et al v. Xavier Becerra et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

Melissa Kunig/Rolls Royce Paschal — Deputy Clerk

N/A — Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF: Not Present

ATTORNEYS PRESENT FOR DEFENDANT: Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER (Doc. 57)**

Before the Court is a Motion to Transfer Venue filed by Defendants Planned Parenthood Affiliates of California ("PPAC") and Beth Parker[1] (collectively, "Defendants").[2] (Mot., Doc. 57.) Plaintiffs opposed (Opp., Doc. 135), and Defendants replied (Reply, Doc. 138).[3] Other named defendants in this matter joined in the Motion to Transfer. (Docs. 63–65.) The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Accordingly, the hearing scheduled for **November 13, 2020 at 10:30 a.m. is VACATED**.

For the reasons below, the Court GRANTS Defendants' Motion and TRANSFERS this action to the U.S. District Court for the Northern District of California, San Francisco Division. Because the Court finds transfer appropriate, it declines to address the other pending motions and applications in this matter. (*See* Docs. 66, 72, 77, 79, 81, 87, 88, 105, 142.) To the extent those motions are not mooted by transfer, the questions presented therein are reserved for the transferee court. Accordingly, the hearings set for all pending motions are VACATED.

[1] Defendant Beth Parker serves as General Counsel for several California Planned Parenthood affiliates and was previously Chief Legal Counsel for PPAC and counsel in the related litigation in the Northern District. (Lee Decl., Doc. 57-2, ¶ 3.)

[2] The Court uses "Defendants" to refer to the PPAC Defendants bringing this Motion or to all Defendants as appropriate in a given context.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

## I. REQUEST FOR JUDICIAL NOTICE

As an initial matter, Defendants request that the Court take judicial notice of twenty-one documents—all of them are pleadings, orders, appeals, or other public filings related to the three proceedings identified below (*see* RJN, Doc. 58):

- National Abortion Federation ("NAF") v. Center for Medical Progress, 3:15-cv-03522-WHO (the "NAF litigation");
- Planned Parenthood Federation of America, Inc. ("PPFA") v. Center for Medical Progress, 3:16-cv-00236-WHO (the "Planned Parenthood litigation"); and
- People v. Daleiden, Case No. 2502505 (S.F. Superior Court) (the "Criminal Proceedings").

A fact is appropriate for judicial notice if it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012). Appropriate for judicial notice are "undisputed matters of public record, including documents on file in federal or state court." *Harris*, 682 F.3d at 1132. The Court GRANTS Defendants' request for judicial notice to the extent this Order relies on any documents to summarize the related proceedings. However, the Court does not rely on any of the factual findings in previous proceedings for their truth or rule on the preclusive effects of any of those findings. *See M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir.1983) ("A court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.").

## II. BACKGROUND

From 2013 until mid-2015, the Center for Medical Progress ("CMP") and its founder David Daleiden (collectively, "Plaintiffs") secretly recorded representatives of organizations that provide abortions, including conversations of representatives of three of the defendants here: Planned Parenthood Federation of America ("PPFA"), PPAC affiliates, and the National Abortion Federation ("NAF"). (Compl., Doc. 1, ¶ 45–46.) To

**CIVIL MINUTES – GENERAL** 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

gain access to events and record these conversations, Plaintiffs began "network[ing] within the professional abortion industry as representatives of BioMax," a company that Plaintiffs incorporated for the purpose of "investigating" the Defendants here, among others. (*Id.* ¶ 46.) After Plaintiffs published excerpts from their recordings, NAF and PPAC, along with other affiliates of PPFA, sued CMP, Daleiden, and other CMP agents, in the Northern District of California, claiming that the secret recordings were illegal. The California Attorney General (the "AG") filed a criminal complaint against Daleiden in San Francisco Superior Court.

On May 12, 2020, Plaintiffs brought the present action, claiming that Defendants conspired to procure an indictment against Daleiden and that Daleiden was prosecuted in a discriminatory manner and in violation of the First Amendment. (*See generally* Compl.) On July 7, 2020, Defendants brought the present Motion to Transfer Venue, arguing, among other things, that the present action is related to the two pending civil actions and the criminal proceedings identified above. (Mot. at 2–10.) The related proceedings and Plaintiffs' allegations are further summarized below.

**A. Relevant Proceedings in the Northern District**

Defendants argue that three proceedings in the Northern District are relevant here.

**1. The NAF Action**

In 2015, the NAF filed suit against Plaintiffs, and others who had participated in the secret recording of their representatives, in the Northern District, alleging that "defendants surreptitiously recorded NAF's staff as well as speakers and participants in . . . contravention of agreements they signed to gain access" to NAF conferences. *Nat'l Abortion Fed'n v. Ctr. for Med. Progress* ("NAF I"), No. 15-CV-03522-WHO, 2018 WL 5879786, at *1 (N.D. Cal. Nov. 7, 2018), *aff'd*, 793 F. App'x 482 (9th Cir. 2019). Judge Orrick entered a preliminary injunction prohibiting Plaintiffs from disseminating "video, audio, photographic, or other recordings taken, or any confidential information learned" in the NAF meetings that CMP agents attended, and primarily the annual NAF meeting in

CIVIL MINUTES – GENERAL 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

San Francisco. *NAF v. Ctr. for Med. Progress* ("NAF II"), 2017 WL 3021024, at *1–2 (N.D. Cal. July 17, 2017).[4]

Judge Orrick's decision to issue a preliminary injunction was based in part on his finding that incidents of harassment and violence against abortion providers increased after the videos were published, and that if further materials were publicly released, the attendees shown in those recordings would face an increase in harassment, threats, or incidents of violence. *Nat'l Abortion Fed'n v. Ctr. for Med. Progress* ("NAF III"), No. 15-CV-03522-WHO, 2016 WL 454082, at *22 (N.D. Cal. Feb. 5, 2016) (subsequent history omitted). He further reasoned that "[w]hile the disclosure of evidence of criminal activity . . . could outweigh enforcement of NAF's confidentiality agreements there [was] no such evidence in [Daleiden and CMP's] recordings." *Id.* at *23.

**2. The Planned Parenthood Action**

In 2016, Planned Parenthood Federation of American (PPFA) and some of its affiliates—including the California affiliates that constitute Defendant PPAC—also sued Plaintiffs here in the Northern District, alleging that they "created a complex criminal enterprise involving fake companies, fake identifications, and large-scale illegal taping of reproductive health care conferences and private meetings in order to advance their goal of interfering with women's access to legal abortion." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress* ("PPFA I"), 214 F. Supp. 3d 808, 816 (N.D. Cal. 2016) (subsequent history omitted). Specifically, PPAC and the other plaintiffs in that action claimed that Daleiden and CMP employees pretended to be officers and employees of BioMax—a fake company—and that they used pseudonyms, manufactured fake identification, and signed binding confidentiality agreements to gain access to private conferences held by Planned Parenthood and NAF. *Id.* PPAC and the other plaintiffs in that action brought fifteen claims against defendants, including civil conspiracy, common law invasion of privacy, trespass, and violation of California Penal Code Section 632 ("Section 632"). *Id.*

[4] Daleiden and his attorneys violated the injunction by disseminating the enjoined videos, resulting in a finding of contempt and a sanctions order requiring them to pay NAF $195,359.04. *NAF v. Ctr. for Med. Progress*, 2017 WL 3782117, at *5 (N.D. Cal. Aug. 31, 2017).

**CIVIL MINUTES – GENERAL** **4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

On cross motions for summary judgment, Judge Orrick denied Daleiden's motion in whole or in part on all the claims. As relevant here, Judge Orrick held that some of the damages plaintiffs sought were "more akin to publication or reputational damages that would be barred by the First Amendment" but that the First Amendment did not categorically bar damages stemming from the "*direct* acts of defendants – their intrusions, their misrepresentations, and their targeting and surreptitious recording of plaintiffs' staff." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress* ("PPFA II"), 402 F. Supp. 3d 615, 644 (N.D. Cal. 2019) (emphasis in original).

A jury rendered a verdict in plaintiffs' favor on the remaining claims, awarding over two million dollars in compensatory, statutory, and punitive damages. Judge Orrick permanently enjoined defendants in that action, including Daleiden and CMP, from entering future private conferences held by the plaintiff organizations and from illegally recording plaintiffs. *See Planned Parenthood Fed' n of Am., Inc. v. Ctr. for Med. Progress* ("PPFA III"), No. 16-CV-00236-WHO, 2020 WL 2065700, at *28 (N.D. Cal. Apr. 29, 2020).

**3. The Criminal Proceedings**

On March 28, 2017, the California Attorney General (the "AG") filed a criminal complaint against Daleiden in San Francisco Superior Court that included fourteen counts of violating Section 632 and one count of criminal conspiracy. (Ex. A to RJN, Doc. 58-1.) At issue in the criminal proceeding are eleven recordings made by Plaintiffs at various conferences—eight of the recordings were made at the NAF conference in San Francisco. (*Id*.)

Daleiden challenged the criminal proceedings against him on several grounds. As relevant here, Daleiden moved to dismiss the original complaint on selective prosecution grounds (Ex. K to RJN, Doc. 58-11.); contended that the allegedly close relationship between the Attorney General, Planned Parenthood, and the NAF required the recusal of the Attorney General (Ex. L to RJN, Doc. 58-12); and—after the Superior Court conducted a preliminary hearing and found that the People could proceed on eight counts of the operative complaint—he argued that the recordings were protected by California Penal Code Section 633.5 ("Section 633.5") because he allegedly made the recordings in order to obtain evidence of a felony involving violence against a person. (Ex. B to RJN,

CIVIL MINUTES – GENERAL 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

Doc. 58-2.) All of the aforementioned attempts to dispose of the criminal case at the pretrial stage have been unsuccessful so far. (*See* Exs. B, R, T to RJN, Docs. 58-2, 58-18, 58-20.)

On April 30, 2020, Daleiden filed a motion to set aside the information, arguing, as he does here, that the prosecution is discriminatory and violates his First Amendment rights. (Ex. D to RJN, Doc. 58-3.) Unless that motion is successful, the criminal case is likely to go to trial in 2021. (Lee Decl. ¶ 21.)

**B. The Present Action**

Plaintiffs' Complaint tells a conflicting account. Plaintiffs contend that they used "long-established undercover journalistic techniques" to capture Defendants "making multiple shocking and callous admissions" about illegally profiteering from the sale of fetal tissue. (Compl. ¶¶ 6–7.) Plaintiffs' videos prompted congressional investigations, and purportedly led directly to the successful prosecution of two organizations not involved in this action. (*Id.* ¶¶ 70–71.)

Plaintiffs allege that, in retaliation, Defendants conspired to weaponize California's recording statutes to punish Plaintiffs for the content of their speech rather than the recording methods they utilized. (*Id.* ¶¶ 8, 82, 177.) Specifically, Plaintiffs allege that Planned Parenthood executives directed their facilities to file criminal complaints regarding anti-abortion protests, even peaceful ones. (*Id.* ¶ 91.) Planned Parenthood allegedly coupled these complaints with emails to then-Attorney General Kamala Harris's office, claiming fear due to an uptick in violence against their staff and facilities. (*Id.* ¶¶ 87–88.) Plaintiffs allege that, on March 23, 2016, Planned Parenthood representatives met with Harris in Los Angeles to "lobby [her] to apply Penal Code Section 632 to silence Mr. Daleiden and CMP's speech." (*Id.* ¶ 99.) The California Department of Justice was therefore allegedly carrying out Planned Parenthood's wishes when it prepared a warrant for the search of Daleiden's home in Orange County and raided it on April 5, 2016. (Compl. ¶¶ 64, 94, 103.)

Finally, in support of their contention that the prosecution was politically motivated, Plaintiffs state that local law enforcement and prosecutors in the Central District of California—specifically in Pasadena and Los Angeles—declined to act on the Planned Parenthood facilities' criminal complaints. (*Id.* ¶ 84, 95.)

**CIVIL MINUTES – GENERAL** **6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense."' *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citing *Cont. Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27 (1960)). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

To support a motion for transfer, the moving party must establish: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp*., 820 F. Supp. 503, 506 (C.D. Cal. 1992) (citation omitted). In determining the final factor—convenience of the parties and witnesses and the interests of justice—the Ninth Circuit considers "multiple factors" including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99.

CIVIL MINUTES – GENERAL 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

## IV. DISCUSSION

The parties do not dispute that venue is proper both here and in the Northern District of California; therefore, Defendants' Motion turns on whether transfer would (1) promote the interests of justice and (2) serve the convenience of parties and witnesses.

### A. Interests of Justice

In considering the interests of justice, the Court weighs such factors as "ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Financial, Inc., v. Midwhey Powder Co*., 883 F.2d 1286, 1293 (9th Cir.1989). "While many factors may be considered in determining the interests of justice, 'concerns over judicial efficiency are paramount.'" *Avalon Glass & Mirror Co. v. Elec. Mirror, LLC*, No. 216-CV-06444-CAS-SKX, 2016 WL 7217579, at *3 (C.D. Cal. Dec. 12, 2016). Moreover, "[t]he pendency of related actions in the transferee forum is a significant factor in considering the interest of justice factor." *Jolly v. Purdue Pharma L.P*., 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005) (internal citations omitted).

Here, if the Court transfers the case, it would "almost certainly be reassigned to [Judge Orrick] under related case procedures." *See Madani v. Shell Oil Co.*, No. C07-04296 MJJ, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008). Judge Orrick's five years of experience with the PPFA and NAF cases before him, and his knowledge of the related criminal proceedings weighs heavily in favor of transferring the case. Daleiden has already raised First Amendment challenges to Section 632 and has brought Section 633.5 defenses in the Northern California actions. Judge Orrick has ruled on the applicability of those California statutes to Daleiden's surreptitious recordings and has considered the constitutional and statutory challenges Daleiden raises here. Finally, Judge Orrick has made parallel rulings to minimize the effect of the civil litigation on the criminal proceedings and is therefore presumably familiar with the criminal prosecution, which is at the heart of the present action. (Ex. C to RJN, Doc. 58-3.)

Given Judge Orrick's years of experience with the related cases, he "is . . . more familiar than this Court with underlying factual contentions that are common to [the]

**CIVIL MINUTES – GENERAL** 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

actions." *Id.* "This Court, in contrast, would have to invest significant time and resources to reach a similar level of familiarity." *Id.* Interests of judicial efficiency thus strongly weigh in favor of transfer because "[j]udicial resources are conserved when an action is adjudicated by a court that has already 'committed judicial resources to the contested issues and is familiar with the facts of the case.'" *Madani*, 2008 WL 268986, at *2.

In opposition, Plaintiffs argue that "[n]one of the elements or facts Plaintiffs need to prove to prevail deal with the Plaintiffs' filming, Defendants' conferences, or any contract between the parties [and therefore] Judge Orrick's experience . . . would have no bearing on the adjudication of Plaintiffs' claims here." (Opp. at 21.) The Court disagrees. As discussed, this action requires the Court to consider whether application of Section 632 violates the First Amendment, whether Section 633.5 affirmative defenses apply to Daleiden's actions, and whether California Department of Justice officials wrongfully prosecuted Daleiden because his actions as a "citizen journalist" are protected by the First Amendment. (*See generally* Compl.) Contrary to Plaintiffs' assertion, the addition of Defendants who are not party to the civil litigation before Judge Orrick (*i.e.*, the state officials involved in the prosecution) does not weigh against transfer—the addition of parties and issues does not diminish the value of Judge Orrick's familiarity with the largely overlapping facts and legal arguments at issue both here and in the related actions.

**B. *Jones* Factors**

The Court next turns to the *Jones* factors, which also favor transfer.

**1. The location where the relevant agreements were negotiated and executed, the respective parties' contacts with the forum, and the contacts relating to plaintiffs' cause of action that occurred in the chosen forum.**

The central allegation of this case is that state prosecutors are conducting a retaliatory prosecution against Daleiden—the criminal complaint in that prosecution was filed in San Francisco Superior Court and is currently pending there. Moreover, the underlying conduct that gave rise to the prosecution occurred primarily in San Francisco.

CIVIL MINUTES – GENERAL 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

Specifically, eight of the eleven recordings at issue in the criminal proceedings took place at the NAF annual meeting in San Francisco. (Ex A. to RJN; Compl. ¶ 66.) San Francisco was also the location where Plaintiffs entered contracts agreeing not to record NAF events. Defendants argue, correctly, that these agreements are relevant because Plaintiffs are now "claiming that their rights to secretly record were violated even though Plaintiffs entered into contracts agreeing not to make such recordings." (Mot. at 14.) In sum, the center of gravity of this action is in San Francisco.

In opposition, Plaintiffs point to the Complaint's allegation that Planned Parenthood representatives met with Harris in Los Angeles to further the purpose of their conspiracy, and that the Department of Justice unlawfully searched Daleiden's home in Orange County. (Compl. ¶¶ 97–99; 101–103.) But a handful of facts are not enough to tip the scales in the other direction. At heart, this case is about whether Defendants conspired to punish Daleiden for his protected First Amendment activities. As discussed, those allegedly protected activities all occurred in San Francisco and the allegedly wrongful prosecution is currently ongoing there.

Plaintiffs also point out that law enforcement and prosecutors located in the Central District decided not to act on Planned Parenthood's criminal complaints. (Opp. at 19; Compl. ¶ 176.) But this action is not about the decision of certain government officials *not to* investigate Plaintiffs. At most, this is an argument by Plaintiffs that the decision of some government officials not to investigate tends to prove that the Attorney General's prosecution is politically motivated and that certain witnesses Plaintiffs intend to use to prove that fact are located in the Central District. The *Jones* factors relating to witnesses and sources of proof are addressed below.

In sum, the facts giving rise to the allegedly wrongful prosecution and the bulk of the alleged wrong occurred in San Francisco, and the only relevant events Plaintiffs have identified in the Central District are the alleged meeting between Harris and Planned Parenthood, and the allegedly unlawful search of Daleiden's home; therefore, this factor weighs in favor of transfer.

**CIVIL MINUTES – GENERAL** **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

**2. The differences in the costs of litigation in the two forums and the availability of compulsory process to compel attendance of unwilling non-party witnesses.**

Defendants argue that "the majority of witnesses are located in the Northern District, or nearby in Sacramento," and that "witnesses in Sacramento and the Bay Area are better served by a San Francisco forum than the current Orange County forum." (Mot. at 17; Lee Decl. ¶¶ 10–17.)[5] Specifically, Defendants identify eight non-party witnesses. Two of those witnesses are located in San Francisco and the rest in Sacramento, and they would therefore find San Francisco—which is a little over an hour drive away—a more convenient forum for litigation than Orange County, which is over a six-hour drive away and would likely require them to fly here. (Reply at 12; Supplemental Lee Decl., Doc. 138-1, ¶ 20; *see also Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (noting that "[t]he convenience of non-party witnesses is a more important factor than the convenience of party witnesses").) Defendants conclude that the Northern District is the less expensive forum for this litigation because most of the defendants and witnesses are located closer to that court, Plaintiffs' lead counsel is located in San Francisco, and Judge Orrick's familiarity with the issues will make the litigation less time consuming. (Mot. at 17.)

Plaintiffs counter with a list of forty-five non-party witnesses they purportedly intend to call at trial, the majority of whom are in the Central District and none of whom are in the Northern District. (Opp. at 9–13.) But, in balancing the convenience of witnesses, "courts must consider not only the number of witnesses, but also the *nature and quality of their testimony*." *Metz*, 674 F. Supp. 2d at 1147 (emphasis added). Plaintiffs fail to explain their proposed witnesses' roles in this matter and do not proffer any evidence about the quality of the anticipated testimony. The descriptions that Plaintiffs *do* offer are conclusory statements about the proposed witnesses' anticipated testimony. Those descriptions are so bareboned that the Court cannot ascertain whether the witnesses' anticipated testimony is likely to add any real value to the proceedings.

[5] The parties have not identified any witnesses that would be outside the transferee court's subpoena power as a result of transfer. The Court therefore analyzes only the convenience of witnesses, and not their availability.

CIVIL MINUTES – GENERAL 11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

For example, for several of the listed witnesses, Plaintiffs state only: "Expected testimony regarding the nature and extent of the conspiracy" or "Expected testimony regarding motives of the conspiracy." (*See* Opp. at 9–13.) But these descriptions, which are identical for several undifferentiated witnesses, fail to explain how the proposed witnesses have any relevant knowledge regarding those topics. And the rest of the descriptions are no more detailed or helpful in weighing the value of these witnesses than the examples cited here.[6]

Accordingly, Defendants have carried their burden of showing that the convenience of most of the parties to the action, and particularly the convenience of likely non-party witnesses, weigh in favor of transfer.

**3. Plaintiffs' choice of forum.**

Generally, "[a] defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1191 (S.D. Cal. 2007) (citing *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986)). But the existence of certain factors, like evidence of forum shopping, diminishes the weight to be afforded to plaintiff's choice of forum. For example, "evidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily [against plaintiff's choice of forum]." *Wireless Consumers All., Inc. v. T-Mobile USA, Inc*., No. C 03-3711 MHP, 2003 WL 22387598, at *5 (N.D. Cal. Oct. 14, 2003).

Here, Plaintiffs have made two unsuccessful attempts to disqualify Judge Orrick in the Northern District actions. *NAF v. Ctr. for Med. Progress* ("NAF IV"), 257 F. Supp. 3d 1084, 1087-88 (N.D. Cal. 2017); *PPFA v. Ctr. for Med. Progress* ("PPFA IV"), 2017 WL 4641940, at *1 (N.D. Cal. Oct. 17, 2017). Moreover, Judge Orrick has now entered a final judgment and findings of fact in the Planned Parenthood litigation, including finding that Daleiden is liable for violating Section 632 and rejecting Daleiden's First Amendment and Section 633.5 defenses. (Ex. N to RJN, Doc. 58-14.) These findings could potentially have preclusive effects here. The evidence therefore suggests that

[6] By contrast Defendants' list of non-party witnesses is derived from the Complaint and the relevance of those witnesses is therefore clear.

CIVIL MINUTES – GENERAL 12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00891-JLS-DFM Date: November 12, 2020
Title: Center for Medical Progress et al v. Xavier Becerra et al

Plaintiffs chose this forum to avoid litigating this suit before Judge Orrick, who is best positioned to determine the effects of the Planned Parenthood and NAF actions on the present suit. Accordingly, the Court finds that Plaintiffs' choice of forum is not entitled to significant weight.

**4. The ease of access to sources of proof.**

The allegedly wrongful criminal case is pending in San Francisco Superior Court; therefore, the sources of proof relating to the prosecution are presumably located there. Moreover, as discussed above, that forum is more convenient to most of the witnesses. However, most sources of proof—other than witness testimony—are presumably electronic and can be transferred with ease. "[E]ase of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations." *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009).

**5. The state that is most familiar with the governing law.**

Both this Court and the transferee court are located in California and are therefore equally familiar with California and federal law. This factor is therefore neutral.

## V. CONCLUSION

As discussed, the Court concludes that the interests of justice factor weighs heavily in favor of transfer. "The interest of justice alone can be decisive even if witness and party convenience weigh against transfer." *Wood v. Best Buy Co.*, No. 11-1877 SC, 2011 WL 3740812, at *1 (N.D. Cal. Aug. 25, 2011). Here, the *Jones* factors, while presenting a closer case, also weigh in favor of transfer. The Court therefore GRANTS Defendants' Motion to Transfer and TRANSFERS this action to the Northern District of California, San Francisco Division.

Initials of Preparer: mku/rrp

**CIVIL MINUTES – GENERAL** **13**